No. 24-1940

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
_____

**JUSTIN RIDDLE,**

Plaintiff-Appellant,

v.

**OMAHA PUBLIC SCHOOLS,**

Defendant-Appellee.

_____

On Appeal from the United States District Court
for the District of Nebraska
Case No. 8:23-cv-00547

The Honorable Robert F. Rossiter, Jr.
Chief United States District Judge

_____

**BRIEF OF APPELLEE
OMAHA PUBLIC SCHOOLS**

_____

BAIRD HOLM LLP
David J. Kramer
Steven D. Davidson
1700 Farnam Street, Ste 1500
Omaha, NE 68102-2068
(402) 344-0500
dkramer@bairdholm.com
sdavidson@bairdholm.com

Attorneys for Defendant-Appellee, Omaha Public Schools

## SUMMARY OF THE CASE

Plaintiff-Appellant, Justin Riddle ("Appellant" or "Riddle") appeals the District Court's decision granting the Rule 12(b)(6) Motion to Dismiss of the Defendant-Appellee, Omaha Public Schools ("Appellee" or "OPS"). Riddle, who is *pro se*, alleged (1) entity violations of his First Amendment right to free speech and his Fourteenth Amendment procedural Due Process rights arising from his interactions with the OPS Board of Education, and (2) conspiracy to violate those constitutional rights. In a Memorandum and Order dated April 19, 2024, Chief Judge Rossiter correctly determined that Riddle's Complaint failed to plausibly allege OPS action pursuant to an official policy or unofficial custom, necessary for a local governmental body to be liable under 42 U.S.C. § 1983, either for its own alleged actions or, through conspiracy, the acts of other government actors under the requirements set forth in *Monell v. Dep't of Soc. Servs. of N.Y.C.,* 436 U.S. 658 (1978).

OPS respectfully requests that the District Court's decision be summarily affirmed without oral argument.

i

# CORPORATE DISCLOSURE STATEMENT

The Defendant-Appellee, Omaha Public Schools, is a Nebraska political subdivision and public school district.

ii

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES.............................................................1

STATEMENT OF THE CASE.............................................................1

    A.  **The Parties** .........................................................................1

    B.  **Public Participation at OPS Board Meetings**........................2

    C.  **The August 2, 2021 Board Meeting** ....................................3

    D.  **Plaintiff's Subsequent Participation at OPS Board Meetings**...............6

    E.  **The Harassment Protection Order**......................................8

    F.  **The Lawsuits**......................................................................9

    G.  **The District Court's Order**..................................................11

SUMMARY OF THE ARGUMENT .................................................12

ARGUMENT ..................................................................................12

    A.  **Standard of Review and Riddle's Multiple Filings**..............12

    B.  **The District Court Correctly Dismissed Appellant's Complaint because Plaintiff Did Not Allege a Plausible Claim of Entity Liability under Section 1983 and Monell**...............14

CONCLUSION................................................................................22

Appellate Case: 24-1940    Page: 4    Date Filed: 06/28/2024    Entry ID: 5408579

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................13

*Brooks v. Midwest Heart Group*,
  655 F.3d 796 (8th Cir. 2011) ..........................................................................20

*Chapman v. Musich*,
  726 F.2d 405 (8th Cir. 1984), *cert. denied*, 469 U.S. 931 (1984) ....................15

*City of Canton v. Harris*,
  489 U.S. 378 (1989)..........................................................................................16

*Corwin v. City of Indep., MO.*,
  829 F.3d 695 (8th Cir. 2016) ...........................................................................16

*D.B. v. Hargett*,
  No. CIV 13-2781 MJD/LIB, 2014 WL 1371200,
  (D. Minn. Apr. 8, 2014) ...................................................................................18

*Davison v. City of Minneapolis*,
  490 F.3d 648 (8th Cir. 2007) ...........................................................................20

*Dean v. County of Gage, Nebraska*,
  807 F.3d 931 (8th Cir. 2015), *cert. denied sub nom. Gage County,*
  *Nebraska v. Dean*, No. 15-1278, 2016 WL 1545463
  (U.S. June 20, 2016) .........................................................................................21

*Dorothy J. v. Little Rock Sch. Dist.*,
  7 F.3d 729 (8th Cir. 1993) ...............................................................................13

*Holman v. Riddle*,
  No. CI 21-8450 (Neb. Dist. Ct. Sept. 16, 2021) ...............................................9

Appellate Case: 24-1940    Page: 5    Date Filed: 06/28/2024 Entry ID: 5408579

*Holscher v. Mille Lacs Cnty.*,
    924 F. Supp. 2d 1044 (D. Minn. 2013)................................................................18

*Jane Doe A. v. Special School District of St. Louis*,
    901 F.2d 642 (8th Cir. 1990) ..............................................................................17

*Jasperson v. Purolator Courier Corp.*,
    765 F.2d 736 (8th Cir. 1985) ..............................................................................14

*Larsen v. Papillion La Vista Cmty. Sch. Dist.*,
    No. 8:23CV190, 2023 WL 7183795 (D. Neb. Nov. 1, 2023) ............................18

*Lee v. Pine Bluff School District*,
    472 F.3d 1026 (8th Cir. 2007) ........................................................................1, 18

*Livers v. Schenck*,
    700 F.3d 340 (8th Cir. 2012) ..............................................................................21

*Mettler v. Whitledge*,
    165 F.3d 1197 (8th Cir. 1999) ......................................................................16, 17

*Monell v. Dep't of Soc. Servs. of N.Y.C.*,
    436 U.S. 658 (1978)..................................................................................*passim*

*Novotny v. Tripp County, S.D.*,
    664 F.3d 1173 (8th Cir. 2011) ............................................................................22

*P.H. v. School Dist. of Kansas City*,
    265 F.3d 653 (8th Cir. 2001) ..............................................................................17

*Papasan v. Allain*,
    478 U.S. 265 (1986)............................................................................................13

*Perryman v. City of Bloomington*,
    No. CV 23-1984, 2023 WL 8374283 (D. Minn. Dec. 4, 2023) ...................21, 22

*Porous Media Corp. v. Pall Corp.*,
    186 F.3d 1077 (8th Cir. 1999) ..............................................................................4

*Riddle v. Omaha Pub. Sch.*,
    No. 8:23-CV-00455 (D. Neb. Oct. 17, 2023) ....................................................10

Appellate Case: 24-1940    Page: 6    Date Filed: 06/28/2024 Entry ID: 5408579

*S.J. v. Kansas City Missouri Pub. Sch. Dist.*,
    294 F.3d 1025 (8th Cir. 2002) ........................................................17, 19

*Shrum ex rel. Kelly v. Kluck*,
    249 F.3d 773 (8th Cir. 2001) ...................................................................16

*Snider v. City of Cape Girardeau*,
    752 F.3d 1149 (8th Cir. 2014) .................................................................17

*Stone v. Harry*,
    364 F.3d 912 (8th Cir. 2004) ...................................................................14

*Thelma D. ex rel. Delores A. v. Bd. of Educ. of City of St. Louis*,
    934 F.2d 929 (8th Cir. 1991) ...................................................................17

*Wilson v. City of Des Moines*,
    293 F.3d 447 (8th Cir. 2002) ...................................................................14

*Wilson v. Garcia*,
    471 U.S. 261 (1985)...................................................................................15

## Statutes

42 U.S.C. § 1983 ................................................................................*passim*

Neb. Rev. Stat. § 84-712.01 ..........................................................................4

Neb. Rev. Stat. § 84-1411(1)(a) .....................................................................2

Neb. Rev. Stat. § 84-1412(2) ..........................................................................2

Neb. Rev. Stat. § 84-1412(3) ......................................................................2, 3

Nebraska Open Meetings Act,
    Neb. Rev. Stat. §§ 84-1407 to 84-1414 ..................................................2

## Other Authorities

Fed. R. Civ. P. 12 ........................................................................................11

Fed. R. Civ. P. 12(b)(1)...........................................................................11, 12

Fed. R. Civ. P. 12(b)(6)...............................................................4, 11, 12, 13

Appellate Case: 24-1940    Page: 7    Date Filed: 06/28/2024 Entry ID: 5408579

## STATEMENT OF THE ISSUES

1.      Whether the District Court properly dismissed the Complaint for failure to state a claim upon which relief can be granted when the Complaint, liberally construed, failed to plausibly allege a constitutional injury as a result of OPS action pursuant to an official policy or unofficial custom.

*Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978)

*Lee v. Pine Bluff School District,* 472 F.3d 1026 (8th Cir. 2007)

## STATEMENT OF THE CASE

### A.      The Parties

OPS is a school district located in Douglas County, Nebraska, offering public education to more than 50,000 students.  (R. Doc. 7, at 1).  OPS is governed by a Board of Education that consists of nine elected board members (the "Board").  (*Id.*).  The Board holds regular meetings, portions of which are open to the public.  (*Id.*, at 1-2).  At the time of the incidents alleged in the Complaint, the Board President was Dr. Shavonna Holman.  (*Id.*, at 2).

Appellant, Justin Riddle, is an individual residing in Omaha, Nebraska, and a frequent participant at OPS Board meetings.  (R. Doc. 1, at 1).  The operative events in the Complaint resulted from Plaintiff's appearance at the August 2, 2021, OPS Board meeting.  (*Id.*, at 2).  The public comment portion of that Board meeting, as is customary, was streamed live on the OPS website and a video recording was made available to the public after the meeting.  (R. Doc. 7, at 2).

1

**B.     Public Participation at OPS Board Meetings**

OPS Board meetings are subject to the Nebraska Open Meetings Act, Neb. Rev. Stat. §§ 84-1407 to 84-1414 (the "Act").  The Act requires that public boards provide advance notice of their meetings to facilitate public participation.  Neb. Rev. Stat. § 84-1411(1)(a).  Notably, the Act unambiguously provides that a public body "shall require any member of the public desiring to address the body to identify himself or herself, ***including an address*** and the name of any organization represented by such person unless the address requirement is waived to protect the security of the individual."  Neb. Rev. Stat. § 84-1412(3) (emphasis added).  OPS is granted authority to implement that requirement and others through reasonable rules and regulations promulgated by the Board.  Neb. Rev. Stat. § 84-1412(2).

The rules relevant to Plaintiff's claims are set forth at OPS Policy 8346.  (R. Doc. 8-1, Ex. A).  Subpart A provides members of the public the right to attend Board meetings, without identifying themselves as a condition of admission.  (*Id*., Ex. A, at 1).  Subpart E then establishes additional requirements for persons in attendance who desire to address the Board.  (*Id*., Ex. A, at 2-3).  Specifically, "[m]embers of the public will be permitted to speak at Board meetings at which a public comment is on the Agenda." (*Id*.).  In those instances, members of the public "may speak during the time at which the public comment agenda item is being addressed."  (*Id*.).  While members of the public are not required "to have

2

their name placed on the agenda prior to the meeting in order to speak," they are required to complete a "Request to Be Heard" form. (*Id*.). The form "must be submitted no later than five (5) minutes after the meeting has been called to order." (*Id*.). The Board President has the authority to determine the order of speakers, subject to the limitation that students be granted preference to speak first. (*Id*.).

As to the manner in which the speaker may address the Board, Subpart E incorporates and cites the statutory command at issue verbatim:

> Once called to the podium, Nebraska Revised Statute section 84-1412(3) requires that members of the public identify themselves, spelling their name, ***stating an address*** and the name of any organization the member of the public is representing. Members of the public may request that the address requirement be waived to protect their security by so stating on the Request to [B]e Heard form.

(*Id*.) (emphasis added). Subpart E then states that "[w]hile at the podium, the speaker shall not approach the Board table or individual Board Members." (*Id*.). For both speakers and attendees, the Board President "may order persons who are disorderly to be removed from the meeting and/or direct the microphone be turned off." (*Id*., Ex. A, at 1).

### C. The August 2, 2021 Board Meeting

On August 2, 2021, the OPS Board convened for a meeting at which public comment was on the agenda. Plaintiff and his mother, Cheryl Adamson, were among those in attendance who desired to address the Board. (R. Doc. 1, at 2). Plaintiff's mother was called to the podium prior to Plaintiff, informed the Board

3

that she lived in Omaha, Nebraska, stated and spelled her name, and when asked to state her address, responded that her "husband would not appreciate it."[1] When Dr. Holman next inquired whether Ms. Adamson was "part of OPS," she affirmed that she was and had served as a teacher with the District. At that time, Ms. Adamson was allowed to proceed with her remarks. After offering introductory comments, Ms. Adamson attempted to play a cellphone voice recording, at which time Dr. Holman reminded the speaker that OPS "need[ed] her public comment, but not an audio of someone else's comment." Plaintiff himself then came to the podium to assist Ms. Adamson and played the recording over the microphone. As the recording was being transmitted, an OPS security official can be seen approaching the podium, at which point Plaintiff and Ms. Adamson returned to their seats.

---

[1] Both the Complaint and OPS's Motion to Dismiss referenced the publicly available video recordings of the Board meetings in which Plaintiff participated. The videos are public records, which Neb. Rev. Stat. § 84-712.01 defines as "all records and documents, regardless of physical form, of or belonging to this state, any county, city, village, political subdivision, or tax-supported district in this state, or any agency, branch, department, board, bureau, commission, council, subunit, or committee of any of the foregoing," unless exempted by statute. The District Court properly reviewed and considered the videos in connection with the Motion to Dismiss. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) ("A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).") Cheryl Adamson's remarks can be observed from 47:00 to 51:00 of the recording at the below link: https://www.youtube.com/watch?v=YN0VO4l3FUo&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=67

Several other speakers addressed the Board next. When Plaintiff was then called to the podium, he stated: "My name is Justin Riddle. I live in Omaha. My address is irrelevant. I'm not required to give it."[2] Board President Dr. Holman reminded Plaintiff about the statutory requirement that the speaker state his address. Plaintiff interrupted, proclaiming "[i]t's not a law," and "my time will start now." Dr. Holman then asked staff to turn off the podium microphone. After the microphone was quieted, Plaintiff left the podium, turned and addressed the audience for a brief time, and then directed his attention at Dr. Holman specifically, approaching the dais, pointing at her, and addressing her from only a few feet away. Plaintiff was then removed from the meeting by a security official and a uniformed police officer. A recess was taken, after which the meeting recommenced and proceeded.

In the Complaint, Plaintiff emphasizes that in addition to his mother, a former OPS school teacher, an unidentified "second speaker" was permitted to provide "extended remarks without disclosing [her] address." (R. Doc. 1, at 2). Plaintiff omits that the second speaker was a student, who was in the process of

_____

[2] Plaintiff's remarks can be observed from 58:15 to 59:00 of the recording at the below link:
https://www.youtube.com/watch?v=YN0VO4l3FUo&list=PLznBr7jR8aKWxFFA XV3aeXG45JzJ9Iboy&index=67

Appellate Case: 24-1940    Page: 12    Date Filed: 06/28/2024 Entry ID: 5408579

stating her address, when instructed by Dr. Holman that students were not required to give their address prior to addressing the Board.[3]   *See* OPS Board Policy 8346(E) ("Students of the Omaha Public Schools need not provide their address.").   Other than Plaintiff, Ms. Adamson, and the student speaker, every other speaker at the August 2, 2021 Board meeting complied with the address requirement and was then able to address the Board for the allotted time, irrespective of the content of their remarks.[4]

### D.   Plaintiff's Subsequent Participation at OPS Board Meetings

Despite Plaintiff's claim that OPS engaged in an "escalated level of intimidation and suppression" against him, Plaintiff remained an active participant at OPS Board meetings.  (R. Doc. 1, at 1).  Even after Plaintiff's removal from the August 2, 2021 meeting, he appeared and actively participated at each of the following four meetings, and at many more since.  (R. Doc. 1, at 1-2).  In each subsequent instance, Plaintiff provided his name and address, and was then

---

[3] The student speaker's remarks can be observed from 41:32 through 47:00 of the recording at the below link:
https://www.youtube.com/watch?v=YN0VO4l3FUo&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=67

[4] Public comments at the August 2, 2021 Board meeting can be observed from 28:55 to 1:26:00 of the recording at the below link:
https://www.youtube.com/watch?v=YN0VO4l3FUo&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=67

6

allowed the allotted time for public comment. Below is a chart listing the Board meetings at which Plaintiff participated as a speaker between the August 2, 2021 meeting and the filing of Plaintiff's Complaint, indicating the time on the recording at which Plaintiff's comments can be observed, with a link to the recording for ease of reference.

| | **Summary Chart of Justin Riddle's Participation at OPS Board Meetings From the August 2, 2021 Meeting to his Complaint** |
|---|---|
| 1 | Date: August 2, 2021<br>Provided Name and Address: No<br>Approximate Time of Comments: 58:18 to 100:09<br>Link to Recording:<br>https://www.youtube.com/watch?v=YN0VO4l3FUo&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=65. |
| 2 | Date: August 9, 2021<br>Provided Name and Address: Yes<br>Approximate Time of Comments: 18:00 to 20:55<br>Link to Recording: https://www.youtube.com/watch?v=hdY3EmZI--0&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=64. |
| 3 | Date: August 16, 2021<br>Provided Name and Address: Yes<br>Approximate Time of Comments: 2:26:00 to 2:31:40<br>Link to Recording:<br>https://www.youtube.com/watch?v=XSbd4hCCc64&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=63. |
| 4 | Date: Sept. 9, 2021<br>Provided Name and Address: Yes<br>Approximate Time of Comments: 1:49:00 to 1:54:00<br>Link to Recording:<br>https://www.youtube.com/watch?v=MQFR7eRivrg&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=61. |

| | |
|---|---|
| 5 | Date: Sept. 20, 2021<br>Provided Name and Address: Yes<br>Approximate Time of Comments: 45:14 to 50:9<br>Link to Recording:<br>https://www.youtube.com/watch?v=ZwtkJisO20c&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=60. |
| 6 | Date: Sept. 7, 2023<br>Provided Name and Address: Yes<br>Approximate Time of Comments: 40:00 to 45:04<br>Link to Recording:<br>https://www.youtube.com/watch?v=5SxtP63Qxco&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=8. |
| 7 | Date: Sept. 21, 2023<br>Provided Name and Address: Yes<br>Approximate Time of Comments: 14:25 to 19:41<br>Link to Recording:<br>https://www.youtube.com/watch?v=lcX6RZAle40&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=6. |
| 8 | Date: Oct. 16, 2023<br>Provided Name and Address: Yes<br>Approximate Time of Comments: 32:28 to 38:00<br>Link to Recording:<br>https://www.youtube.com/watch?v=Q2BXHniWu10&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=4. |
| 9 | Date: Nov. 13, 2023<br>Provided Name and Address: Yes<br>Approximate Time of Comments: 39:00 to 44:40<br>Link to Recording: https://www.youtube.com/watch?v=UER8nfOWW-o&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=1. |

### E. The Harassment Protection Order

Plaintiff anchors the alleged underlying violations of the Fourteenth Amendment in the issuance of a state court protection order. (R. Doc. , at 4-5, 8).

8

Plaintiff is referencing the harassment protection order imposed against him in favor of former Board President Dr. Holman, which was requested in her personal capacity. (R. Doc. 8-1, Ex. B) (*Holman v. Riddle*, No. CI 21-8450 (Neb. Dist. Ct. Sept. 16, 2021)).

Dr. Holman filed a Nebraska state court action seeking a harassment protection order on August 23, 2021, after the encounter with Plaintiff at the August 2, 2021 OPS Board meeting. (*Id.*). A state court judge entered the protection order ex parte, and Plaintiff was served with a copy by the Douglas County Sheriff. (*Id.*). Plaintiff subsequently requested a hearing to contest the order, as the applicable state procedure allowed. (*Id.*). On September 16, 2021, a hearing was held. (*Id.*). Plaintiff did not subpoena any witnesses, but both Dr. Holman and Plaintiff appeared and presented evidence. (*Id.*). Following the hearing, the Court entered an order extending the harassment protection order for a period of one year from the original date of entry. (*Id.*). Plaintiff did not appeal the ruling. (*Id.*).

### F.    The Lawsuits

This is Plaintiff's second lawsuit concerning the above events. *See Riddle v. Omaha Pub. Sch.*, No. 8:23-CV-00455 (D. Neb. Oct. 17, 2023). The earlier action likewise sought relief under 42 U.S.C. § 1983 against OPS as an entity alone, but claimed that in addition to the First and Fourteenth Amendment, OPS also violated

9

Plaintiff's Second Amendment right to bear arms. Plaintiff voluntarily dismissed the earlier action after OPS filed a motion to dismiss, filing this action making many of the same claims within a few weeks.

Plaintiff alleged the quieting of his microphone at the August 2, 2021 OPS Board meeting, his subsequent removal from that meeting, and his purported blocking on the social media accounts of various OPS employees and Board members violated his right to free speech. (R. Doc. 1, at 2-4, 5-8). In a single conclusory sentence, Plaintiff contended that OPS "repeatedly restricted Plaintiff's ability to speak at Board meetings …" (*Id*., at 2). Plaintiff provided no additional facts regarding the dates or details of any alleged subsequent incident. (R. Doc. 1, at 1-12).

Plaintiff further claimed the harassment protection order issued in favor of Dr. Holman violated his Fourteenth Amendment procedural Due Process rights. (*Id*., at 8). In support, Plaintiff alleged the protection order was "baseless," in part because Officer Otto did not testify, and Dr. Holman allegedly "waited" until after Officers Lee and Otto had contacted Plaintiff to file for a protection order. (*Id*., at 4-8).

Finally, Plaintiff contended that two alleged phone calls by Officers Otto and Lee constituted an attempt to intimidate Plaintiff and infringe on his First Amendment rights, attributable to OPS through a conspiracy between the District,

10

the Board, and OPD. (*Id*., at 9). The alleged conspiracy Plaintiff further attempted to support through allegations regarding "unwarranted home visits" to persons other than Plaintiff. (*Id*., at 5-9).

Despite seeking nominal damages of $1000 for the alleged violations of Plaintiff's constitutional rights, the Complaint further requested compensatory damages of $250,000, $750,000 in punitive damages, and broad-ranging injunctive relief. (*Id.*, at 10-11).

### G. The District Court's Order

OPS timely filed a Rule 12 Motion to Dismiss in response to the Complaint, alleging a lack of standing to raise third party claims under Rule 12(b)(1), and failure to state a claim under Rule 12(b)(6). (R. Doc. 6). In support of the latter, OPS argued both that the Complaint failed to allege action pursuant to an official policy or unofficial custom, necessary to state a claim against a local governmental body under *Monell*, and further that the Complaint failed to allege any actionable underlying constitutional violation. (*Id.*).

The District Court overruled the Rule 12(b)(1) motion, but granted the Rule 12(b)(6) motion on *Monell* grounds and dismissed the case. (R. Doc. 16). Putting aside whether the actions allegedly taken against Riddle himself were unconstitutional, the Court found that Riddle's allegations were "too conclusory and vague to eke out a claim of widespread unconstitutional conduct." (*Id.,* at 8).

11

The Court concluded that the Complaint did not plausibly allege a "persistent pattern" of unconstitutional misconduct, but rather set forth a "slew of mismatched complaints" that are not "similar, consistent or widespread enough" to meet the demands of *Monell.* (*Id.,* at 9-10). Finally, the Court concluded that Riddle's conspiracy claim failed for the same reason, as Riddle did not plausibly allege that OPS itself participated in the conspiracy through a policy, custom, or action by persons with final decision-making authority, a necessary element of a Section 1983 conspiracy claim against a public body. (*Id.,* at 11). Riddle did not seek leave to amend his pleading, but instead timely appealed.

## SUMMARY OF THE ARGUMENT

The District Court properly found that Appellant's *Monell* and conspiracy claims were deficient. The Complaint did not plausibly allege that Plaintiff has been injured by constitutional violations as a result of action taken pursuant to an official policy or unofficial custom of OPS. The District Court's decision should, therefore, be summarily affirmed.

## ARGUMENT

### A. Standard of Review and Riddle's Multiple Filings

This Court exercises *de novo* review of a district court's order granting a motion to dismiss for failure to state a claim upon which relief can be granted

12

under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 731 (8th Cir. 1993).

In order to survive a motion to dismiss, a complaint must set forth a claim for relief that is "plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted).  Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  A plaintiff is required to show "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the Court draws on its judicial experience and common sense.  *Id.* at 679.  The Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.  *Id*. at 664.  Similarly, the Court need not accept legal conclusions postured as factual allegations.  *Twombly*, 550 U.S. at 555 (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  And, although *pro se* complaints are to be construed liberally, they "still must allege sufficient facts to support the claims advanced."  *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citations omitted).

In addition to the Complaint, Riddle has since filed numerous letters, statements and other miscellaneous narrative filings, both here and in the District Court.  Those filings discuss a broad range of additional topics not included within

13

his Complaint, from various other alleged exchanges with OPS, to his interactions with the Nebraska Attorney General's office, to his broader political views. None are relevant to nor should be considered in connection with this appeal. The merits of Plaintiff's claims are to be measured by the allegations appearing on the face of the Complaint alone, together with those public records the Complaint places at issue. *Jasperson v. Purolator Courier Corp.*, 765 F.2d 736, 740 (8th Cir. 1985).

Finally, some or all of Riddle's brief appears to have been created with the assistance of generative AI. Specifically, Section IV of his argument includes citations to several decisions that do not exist, and which appear from the form of their citation to be the creation of "AI hallucination." (Appellant's Brief, pp. 22-24). *See Hutchinson v. City of Phoenix*, 410 F.4d [sic] 979 (9th Cir. 2005); *Seattle Times Co. v. Seattle*, 327 F.4d [sic] 987 (9th Cir. 2004); *Schmidt v. Herrigan*, 614 F.2d 1159 [sic] (9th Cir. 1980). Similarly, Appellant cites to *Wilson v. City of Des Moines*, 293 F.3d 447 (8th Cir. 2002), however the quote in the explanatory parenthetical is found nowhere in the *Wilson* decision. (Appellant's Brief, p. 16). Arguments premised on such matters should be disregarded.

### B. The District Court Correctly Dismissed Appellant's Complaint because Plaintiff Did Not Allege a Plausible Claim of Entity Liability under Section 1983 and *Monell*

Plaintiff elected to sue only OPS, not any of the individuals involved in the underlying events (whose liability, if any, would be subject to principles of

qualified immunity). (R. Doc. 1, at 1). The liability of OPS as an entity defendant under Section 1983 is governed by the standard established in the line of cases starting with the Supreme Court's *Monell* decision. The District Court correctly concluded that the Complaint fails to plausibly support entity liability under that standard. (R. Doc. 16, at 8-9).

Section 1983 creates no substantive rights, but merely provides a remedy for the deprivation of existing constitutional or statutory protections. *Wilson v. Garcia*, 471 U.S. 261, 278 (1985). To prevail under Section 1983, a plaintiff must establish the following elements: "(1) the defendant[] must act under color of state law; (2) the defendant's actions must be intentional; and (3) the defendant's actions must cause the deprivation of the plaintiff's rights." *Chapman v. Musich*, 726 F.2d 405, 407 (8th Cir. 1984), *cert. denied*, 469 U.S. 931 (1984).

Furthermore, Section 1983 precludes vicarious liability under the doctrine of respondeat superior. "[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Those instances are limited to constitutional violations that resulted from (1) an "official municipal policy," (2) "an unofficial custom," or (3) "a deliberately indifferent failure to train or supervise." *Corwin v. City of Indep., MO.*, 829 F.3d 695, 699–700 (8th Cir. 2016)

Appellate Case: 24-1940   Page: 22   Date Filed: 06/28/2024 Entry ID: 5408579

(*citing Monell*, 436 U.S. at 691; *City of Canton*, 489 U.S. at 389).[5] Those limitations apply to a school district defendant, where "rigorous standards of culpability and causation must be applied to ensure that the [school district] is not held liable solely for the actions of its employees." *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 778 (8th Cir. 2001) (internal citations omitted).

"Policy" and "custom" are not synonymous. "Policy" is defined as "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Conversely, "custom" denotes "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; [and] (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct …" *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014). "A single incident normally does not suffice to prove the existence of a municipal custom." *Mettler*, 165 F.3d at 1205. Thus, both "policy" and "custom" are high bars that require a plaintiff to show that a "school

---

[5] Plaintiff's Complaint does not assert a claim against OPS for failure to train or supervise its employees that could serve as the moving force behind the alleged constitutional violations suffered by Plaintiff. (R. Doc. 1, at 1-12).

[district's] practices … have become 'so permanent and well settled' as to have the effect and force of law." *Jane Doe A. v. Special School District of St. Louis*, 901 F.2d 642, 646 (8th Cir. 1990) (*citing Monell*, 436 U.S. at 691).

Imbedded in the definitions of a "custom" is a requirement that the plaintiff prove deliberate indifference on behalf of the municipal defendant. The Eighth Circuit has addressed the standard with respect to a school district defendant, emphasizing that the plaintiff "must offer evidence that the school district 'had notice that [their] procedures were inadequate and likely to result in a violation of constitutional rights.'" *S.J. v. Kansas City Missouri Pub. Sch. Dist.*, 294 F.3d 1025, 1029 (8th Cir. 2002) (*quoting Thelma D. ex rel. Delores A. v. Bd. of Educ. of City of St. Louis*, 934 F.2d 929, 934 (8th Cir. 1991)). Accordingly, the claimant must prove that "a pattern of misconduct indicates that the school district's … responses to a regularly recurring situation are insufficient to protect the [plaintiff's] constitutional rights." *Id.* (*quoting P.H. v. School Dist. of Kansas City*, 265 F.3d 653, 660 (8th Cir. 2001)). Irrespective of whether the plaintiff predicates his claim on alleged policy or custom, such actions must also themselves be the "moving force" behind the underlying constitutional violation. *Holscher v. Mille Lacs Cnty.*, 924 F. Supp. 2d 1044, 1054 (D. Minn. 2013).

A motion to dismiss is an appropriate procedural vehicle to determine whether a plaintiff has plausibly satisfied the rigorous standard required for a

17

municipal entity's liability under Section 1983. *See Lee v. Pine Bluff Sch. Dist.*, 472 F.3d 1026, 1029 (8th Cir. 2007) (affirming dismissal because "the complaint alleged no policy or custom of the district that caused an alleged constitutional violation."); *D.B. v. Hargett*, No. CIV. 13-2781 MJD/LIB, 2014 WL 1371200, at *6 (D. Minn. Apr. 8, 2014) (same); *Larsen v. Papillion La Vista Cmty. Sch. Dist.*, No. 8:23CV190, 2023 WL 7183795, at *5 (D. Neb. Nov. 1, 2023) (same).

The District Court correctly determined that the facts alleged in Appellant's Complaint, even when liberally construed and viewed in the light most favorable to him with all reasonable inferences drawn therefrom, do not state a plausible Section 1983 claim against OPS under those rules. (R. Doc. 16, at 8-9). The Complaint identifies no OPS policy or custom that could serve as the moving force behind the alleged constitutional violations suffered by Plaintiff. (R. Doc. 1, at 1-12). Instead, Plaintiff conclusorily alleges only that OPS engaged in a "pattern of unconstitutional conduct." (*Id.*, at 1). The underlying factual allegations, however, emanate from limited, isolated, and distinct operative events: (1) the quieting of Plaintiff's microphone and his subsequent removal from a single Board meeting, followed by two phone calls from OPD Officers Lee and Otto; (2) the purported blocking on three social media accounts; and (3) the state court harassment protection order sought by Dr. Holman individually. (*Id.*, at 1-12). Those events alone, as the District Court correctly recognized, even if presumed true, do not

Appellate Case: 24-1940    Page: 25    Date Filed: 06/28/2024 Entry ID: 5408579

constitute a pattern of misconduct by OPS itself in response to regularly recurring circumstances sufficient for OPS as an entity to have violated Plaintiff's constitutional rights, with deliberate indifference. *S.J., supra*; (R. Doc. 16, at 10) ("Riddle's various allegations are not similar enough in nature to each other or to his own alleged injuries to evidence customary conduct of OPS officials.").

Ironically, the deficiency is most acute with Plaintiff's primary allegation, regarding the quieting of his microphone at the OPS Board Meeting. (R. Doc. 1, at 2). Following the August 2, 2021 Board meeting, Plaintiff continued to be an active participant at OPS Board meetings, on his voluntarily compliance with the statutory requirement to state his name and address. (R. Doc. 16, at 4). At no point does he identify any similar ongoing conduct of OPS, whether before or after the constitutional violations now claimed, that would allow the inference of an actionable "custom" under the legal standards described above. (R. Doc. 1, at 1-12). Plaintiff likewise does not allege that any other person had their microphone quieted or were removed from OPS Board Meetings. (*Id.*).

The deficiency persists across Plaintiff's other allegations. (*Id.*). Plaintiff does not allege that others were blocked on social media, or had protection orders entered against them where the District indemnified the petitioner for his or her legal costs. (*Id.*). No underlying widespread pattern of conduct within OPS can plausibly be inferred from Plaintiff's allegations to attribute the various isolated

constitutional violations by individual OPS employees, Board members, or OPD police officers to the District itself. Without such factual contentions, a purported custom could not have served as the moving force behind the constitutional violations Plaintiff claims to have suffered.

The principal cases upon which Appellant relies (among those that are accurate citations to published opinions) are inapposite. For example, *Davison v. City of Minneapolis* was brought by a city employee alleging a retaliation claim for exercise of First Amendment rights. 490 F.3d 648 (8th Cir. 2007). Appellant neither alleged a specific retaliation claim nor is he an OPS employee. Similarly, in *Brooks v. Midwest Heart Group*, an employee alleging Title VII claims against his employer obtained reversal when a motion to dismiss was improperly converted to a motion for summary judgment, a posture very different from that presented here. 655 F.3d 796, 800 (8th Cir. 2011). Appellant's arguments are universally premised on similarly distinguishable precedent.

In sum, the facts as averred do not raise even a remote expectation that imposing the burden of discovery upon OPS, its employees and OPS Board members in this *pro se* action will reveal evidence that the alleged constitutional violations, if any occurred at all, resulted from an OPS policy or custom. The District Court properly concluded that the Complaint failed to state a *Monell* claim under Section 1983.

The appropriate disposition of Plaintiff's conspiracy claim follows directly from the same conclusion. To plead a conspiracy claim under § 1983, a claimant must show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *Dean v. County of Gage, Nebraska*, 807 F.3d 931, 939 (8th Cir. 2015), *cert. denied sub nom. Gage County, Nebraska v. Dean*, No. 15-1278, 2016 WL 1545463 (U.S. June 20, 2016) (internal quotation marks omitted) (*quoting Livers v. Schenck*, 700 F.3d 340, 360-61 (8th Cir. 2012)). When an alleged conspiracy to violate constitutional rights is asserted against a governmental body, the plaintiff must also "show that [the municipal entity] itself participated in the conspiracy either through a policy, custom, or action by persons with final decision-making authority." *Perryman v. City of Bloomington*, No. CV 23-1984 (DWF/DTS), 2023 WL 8374283, at *5 (D. Minn. Dec. 4, 2023) (citing cases). *See also, Novotny v. Tripp County, S.D.*, 664 F.3d 1173, 1179–80 (8th Cir.2011) (affirming dismissal of civil conspiracy claims where plaintiff failed to adequately show an underlying constitutional violation). Thus, Plaintiff's failure to sufficiently allege OPS action pursuant to a policy or custom likewise defeats his conspiracy claim as a matter of law.

21

## CONCLUSION

The District Court correctly dismissed Appellant's Section 1983 claims against OPS. Accordingly, OPS respectfully requests that the decision of the District Court be summarily affirmed.

Dated this 28th day of June, 2024.

OMAHA PUBLIC SCHOOLS,
Defendant-Appellee

By: */s/Steven D. Davidson*
    Steven D. Davidson (#18684)
    David J. Kramer (#19327)
of BAIRD HOLM LLP
    1700 Farnam St. Suite 1500
    Omaha, NE  68102-2068
    Phone: 402-344-0500
    Facsimile:  402-344-0588
    sdavidson@bairdholm.com
    dkramer@bairdholm.com

22

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), in that it contains 5,677 words. This brief was created and formatted using MS Word 11.0 and is in 14-point, Times New Roman Font. The brief has been scanned for viruses, and it is virus-free.

*/s/ Steven D. Davidson*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of June, 2024, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system sending notification of such filing to the following:

Justin E. Riddle
16423 Patrick Avenue
Omaha, NE 68116
Justinriddle@gmail.com

*/s/Steven D. Davidson*

6402306.4

Appellate Case: 24-1940    Page: 30    Date Filed: 06/28/2024 Entry ID: 5408579