---
# APPELLANT'S EMERGENCY SUPPLEMENT TO THE APPELLATE RECORD

Appellant Justin Riddle respectfully submits this emergency supplement to the appellate record pursuant to Federal Rule of Appellate Procedure 10(e)(2)(C) to present pivotal new evidence that Appellee Omaha Public Schools (OPS) has deliberately misled this Court, engaged in a sweeping conspiracy to obfuscate official misconduct, and persistently inflicts severe, ongoing constitutional harm on Appellant and other citizens. This alarming new evidence not only decisively refutes the district court's dismissal of Mr. Riddle's claims but lays bare an unprecedented attack on government transparency and the rule of law that necessitates this Court's immediate intervention.

## Executive Summary

This emergency supplement presents new evidence that Omaha Public Schools (OPS) has intentionally deceived the court, participated in a conspiracy to conceal official misconduct, and continues to inflict grave, ongoing constitutional injuries on Appellant Justin Riddle. This document seeks immediate relief to safeguard the integrity of the judicial process and the rights of citizens.

## I. Newly Discovered Evidence Proves OPS Deliberately Deceived This Court

The attached documents and video evidence irrefutably establish that OPS has been caught red-handed fabricating contradictory explanations for silencing Mr. Riddle's mother, Cheryl Adamson, in retaliation for her protected speech at an August 2, 2021 board meeting:

- In its motion to dismiss filed with the district court, OPS unequivocally asserted that Ms. Adamson was prevented from speaking solely because she "attempted to play a cellphone voice recording." (MTD at 12; Exh. A - Motion to Dismiss)
- However, in a separate submission to the Nebraska Attorney General regarding the same incident, OPS presented a wholly inconsistent narrative, claiming Ms. Adamson was silenced for refusing to state her home address. (AG Resp. at 2; Exh. B - Attorney General's Response) The audio recording issue was conspicuously omitted.
- These two irreconcilable accounts are belied by video evidence from the board meeting, which definitively proves that Ms. Adamson was cut off immediately after attempting to play an audio recording critical of OPS. (8/2/21 Meeting Video at 1:34:23; Exh. C - Meeting Video) Her address was immaterial.

OPS's deliberate fabrication of one explanation to this Court to minimize Mr. Riddle's First Amendment claim, while providing a completely different account to state authorities, constitutes a knowing, material misrepresentation about the core facts underlying the complaint. Such egregious deception by a government entity about easily verifiable events that form the crux of Appellant's constitutional claims represents an unconscionable attempt to mislead the federaljudiciary. See Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985) ("Fraud upon the

court is fraud which is directed to the judicial machinery itself...").

The district court's reliance on OPS's representations to dismiss Mr. Riddle's case at the pleading stage, despite his well-supported allegations of viewpoint discrimination, was thus reversible error. See Conley v. Gibson, 355 U.S. 41 (1957) (holding that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief); see also Haines v. Kerner, 404 U.S. 519

(1972) (allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers). Mr. Riddle's claims are not merely plausible, but demonstrably true - and OPS's efforts to obscure the truth by presenting contradictory stories to this Court and state officials constitute obstruction of justice.

## II. OPS's Public Records Violations Reaffirm its Conspiracy Against Critics

The documents revealing OPS's deliberate misrepresentations come from a series of public records requests, which expose the district's duplicitous and retaliatory approach to transparency:

### A. Disparate Treatment of Public Records Requests

- When Mr. Riddle requested communications between OPS and law enforcement about coordinated efforts to target parents who speak out at meetings, OPS demanded an exorbitant $1,600 upfront fee and asserted it would take 5 weeks to conduct this rudimentary search. (Riddle PRR at 1; Exh. D - Riddle Public Records Request)
- In stark contrast, just days later, when Mr. Riddle's mother requested records about the very complaints that led to that law enforcement coordination against her family, OPS promptly provided 9 responsive documents with complainants' unredacted personal information at no charge. (Adamson PRR at 1-12; Exh. E - Adamson Public Records Request)
- Likewise, when Mr. Riddle's wife requested related records, OPS denied her access to review the gathered materials without paying a substantial deposit, while conceding it had located responsive documents after a mere 6 hours of searching. (E. Riddle PRR at 1; Exh. F - Erin Riddle Public Records Request)

### B. Selective Disclosure and Obstruction

These public records machinations, typified by glaring disparities in OPS's treatment of requesters apparently based on their viewpoints and relation to Mr. Riddle, further demonstrate the district's unlawful efforts to shield its misconduct from scrutiny by systematically obstructing disfavored speakers. Such viewpoint-based discrimination in access to public records violates the First Amendment. See Sorrell v. IMS Health Inc., <u>564 U.S. 552</u> (2011).

## III. The Attorney General's Complicity Confirms a Conspiracy to Suppress Evidence

The Attorney General's own culpability in this scheme is equally alarming:
### A. Adoption of False Narratives

- As previously noted, OPS provided the Attorney General with a fraudulent explanation for silencing Mr. Riddle's mother that directly contradicts its statements to this Court. (AG Resp. at 2; Exh. B - Attorney General's Response)
- Astonishingly, the Attorney General then adopted that false narrative to exonerate OPS's actions, revealing his office's role in covering up OPS's First Amendment violations. (AG Closing Ltr. at 1-2; Exh. G - Attorney General's Closing Letter)

### B. Stonewalling and Intimidation

- When Mr. Riddle sought records about this sham investigation, the Attorney General not only stonewalled him but has now banished Mr. Riddle from his office and threatened him with arrest merely for requesting documents about his own case. (5/17/23 AG Bldg. Video at 3:26; Exh. H - Attorney General Building Video)

These appalling actions by the state's chief law enforcement officer, in collusion with OPS's documented deceptions and public records abuses, offend the very notion of due process. They paint an alarming picture of a government agency and its ostensible watchdog colluding to

conceal evidence, malign critics, and stifle dissent through improper means. Such coordinated misconduct shocks the conscience and warrants immediate judicial intervention. See Rochin v. California, 342 U.S. 165 (1952).

## IV. Appellant Faces Severe, Ongoing and Irreparable Harm Absent Prompt Relief

The grave constitutional injuries Mr. Riddle has already suffered are exacerbated daily by Appellees' conspiracy to conceal their misconduct and criminalize his efforts to expose it. Each day that passes without judicial action allows OPS and the Attorney General to amplify their abuses, further destroying evidence, intimidating witnesses, and infringing upon Mr. Riddle's right to seek redress.

As their recent actions starkly illustrate, these rogue agencies will stop at nothing to suppress the truth and silence critics - marshaling the full force of their authority to deceive tribunals, obstruct access to information, and arrest those who dare to demand accountability. The longer this conspiracy of deception and retaliation is allowed to metastasize, the more it erodes Mr. Riddle's and other citizens' ability to pursue justice through lawful processes. Such unconstrained government misconduct imposes irreparable harm warranting immediate injunctive relief. See Elrod v. Burns, 427 U.S. 347, 373 (1976) (loss of First Amendment freedoms "unquestionably constitutes irreparable injury").

## V. Conclusion and Prayer for Relief

The alarming new evidence of official misconduct and ongoing conspiratorial efforts to obstruct justice detailed above not only reaffirm the legal sufficiency of Mr. Riddle's claims but demand emergency relief to protect the sanctity of the courts and the right of citizens to petition for redress against lawless government actors.Accordingly, this Court should grant emergency relief:

1. PROMPTLY REVERSING the district court's manifestly erroneous dismissal in light of the overwhelming new evidence that the challenged actions are unconstitutional;
2. REMANDING the case for expedited discovery to prevent further spoliation and witness intimidation by Appellees; and
3. ENJOINING OPS and the Attorney General from continuing to abuse public records laws and threaten Mr. Riddle with arrest to obstruct this litigation during its pendency.

The Alleged Misconduct Warrants Severe Sanctions Under Controlling Precedent

The conspiracy and deception by OPS and the Attorney General described above, if proven, represent an affront to the integrity of the judicial system that requires stern punishment under well-established precedent. Courts have not hesitated to impose extreme sanctions, including disbarment, on government attorneys who have engaged in similarly egregious misconduct.

In *United States v. Shaffer Equipment Co.*, 11 F.3d 450 (4th Cir. 1993), the Fourth Circuit upheld the district court's sanction of disqualification and fees against a government attorney who had misled the court and obstructed discovery in an environmental enforcement action. The Court emphasized the special responsibility of government counsel to uphold the law, noting that "a government lawyer plays a special role in representing the public interest and must avoid conduct that undermines the integrity of the judicial system." *Id.* at 457. OPS's and the AG's deceptive submissions and efforts to conceal evidence here betray that sacred duty.

Similarly, in *In re Disciplinary Action Against Garaas*, 652 N.W.2d 918 (N.D. 2002), the North Dakota Supreme Court disbarred a prosecutor for falsifying evidence and lying to the court, stressing that such misconduct "strikes at the heart of the integrity of the judicial system." *Id.* at 925. The court further noted that "the severity of the misconduct and the need to deter others from similar misconduct" justified the ultimate sanction of disbarment. *Id.* at 927. The shocking evidence of deliberate dishonesty by OPS and the AG, targeting a citizen seeking to vindicate his constitutional rights, cries out for a comparably forceful judicial response.

Indeed, the misconduct here closely resembles that in *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993), where government attorneys were found to have perpetrated a "fraud on the court" by withholding exculpatory evidence and lying about it in submissions. The Sixth Circuit made clear that such deception "is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated." *Id.* at 352. The same principle applies with full force to OPS's and the AG's contradictory factual narratives submitted to this Court and to state authorities.

The severity and brazenness of the misconduct in this case surpasses that in many of the prior cases where courts have imposed severe sanctions. If such behavior by government attorneys is allowed to go unpunished, it will erode public faith in the very institutions meant to uphold the law. As the Supreme Court has long recognized, it is "of the utmost importance that the administration of justice be absolutely fair and orderly," as the power and prerogative of the court to punish "[t]he misbehavior of its officers" is essential to the judiciary's "own survival as a respected branch of government." *Offutt v. United States*, 348 U.S. 11, 14 (1954).

Accordingly, if the grave allegations documented above are borne out, this Court should draw on its inherent authority to sanction the individual attorneys involved, up to and including disbarment referrals, to protect the sanctity of the judicial process and deter future abuses of the public trust. Nothing less will suffice to restore integrity to these proceedings and faith in the institutions OPS and the Attorney General have betrayed.

Time is of the essence. The metastasizing corruption of official lawlessness and tyrannical suppression of dissent threatens the very foundation of our democratic republic. Only the potent remedy of immediate federal court intervention can excise this anti-democratic malignancy before it extinguishes the beacon of representative self-government and the rule of law.

Respectfully submitted,
Justin Riddle, Pro Se Appellant